UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MITSUI SUMITOMO INSURANCE
COMPANY OF AMERICA,

        Plaintiff,                    Case No. 1:15-cv-798

v.                                         HON. JANET T. NEFF

MAC R BEHNKE RENTALS, LTD.,

        Defendant.
_____/

**OPINION**

Plaintiff Mitsui Sumitomo Insurance Company of America filed this insurance subrogation action seeking recovery for a $114,473.66 loss by Plaintiff's insured, Denso Manufacturing Michigan, Inc., related to a shipment of blower motors damaged in a single vehicle trucking accident that occurred during interstate carriage by Defendant Mac R Behnke Rentals, Ltd. Pending before the Court is Defendant's Motion for Summary Judgment (Dkts 46, 47); Plaintiff has filed a Response and Cross-Motion for Summary Judgment (Dkts 48, 49). Defendant has filed a Reply (Dkt 51), and Plaintiff has filed a Surreply (Dkt 52). Having fully considered the parties' submissions, the Court concludes that oral argument would not assist in the disposition of the issues presented. *See* W.D. Mich. LCivR 7.2(d).

For the reasons that follow, Defendant's motion for summary judgment is denied in part and granted in part; the motion is denied as to Plaintiff's Carmack Amendment claim, but granted as to Plaintiff's Bailment claim. Plaintiff's cross-motion for summary judgment is granted in part and denied in part; the Court concludes that Plaintiff has established the elements of its Carmack

Amendment claim, and the only issue remaining for decision is the amount of damages to which Plaintiff is entitled with respect to element three.

## I. Facts

Pursuant to this Court's dispositive motion procedures, the parties have stipulated to the following Joint Statement of Facts (JSMF) (Dkt 50) for purposes of the cross-motions:

1. This action involves a shipment of blower motors (the "Cargo") carried by defendant, Mac R Behnke Rentals Ltd. ("Behnke").

2. Plaintiff, Mitsui Insurance Company of America ("MSI"), is a corporation engaged in the business of providing insurance.

3. MSI and Denso Manufacturing Michigan, Inc. ("Denso") entered into a contract of insurance, a true and accurate copy of which is submitted as PageID.652-685.

4. MSI paid a claim for loss of the Cargo to its insured, Denso, in return for subrogation rights. A true and accurate copy of the subrogation receipt was submitted as PageID.7.

5. Denso is engaged in the business of manufacturing and assembling components for vehicles. For purposes of the instant action, Denso purchased blower motors from its supplier in North Carolina, ANSO[1] North Carolina, for installation into defrost systems used for trucks.

6. Mac R Behnke Rentals Ltd. ("Behnke") is a Michigan corporation with a principal place of business in Battle Creek, Michigan.

---

[1] Although the JSMF identifies the supplier as "ANSO" North Carolina, it appears from the briefing and supporting documentation that the North Carolina manufacturer/supplier is in fact "ASMO."

7. At all material times herein, Behnke was engaged in the business of transporting goods by road in interstate commerce pursuant to authority granted by the United States Department of Transportation.

8. On or about June 23, 2009, Denso and Behnke entered into a "Transportation Services Agreement," a true and accurate copy of which is submitted herewith as Exhibit J-1 and made a part hereof (the "Agreement").

9. Pursuant to the Agreement, Denso engaged Behnke to carry the shipment of blower motors that is the subject of this action (the "Shipment") from ANSO's facility in North Carolina to Denso's facility in Michigan.

10. The Shipment contained over 9,000 blower motors.

11. ANSO packed the Shipment in cardboard containers.

12. Behnke provided a trailer with an air-ride suspension system to minimize road vibration and shock during transportation (the "Trailer").

13. On or about October 15, 2013, the Shipment was loaded into the Trailer at ANSO's facility.

14. Upon completion of loading of the Shipment into the Trailer, Behnke issued a bill of lading, a true and accurate copy of which is submitted as PageID.8.

15. On October 16, 2013 at 3:03 a.m., during interstate carriage of the Shipment, Behnke's truck traveled through Ohio.  Behnke's truck veered off the road, hit a concrete embankment and entered a field, where it ultimately stopped (the "Accident").

16. No other vehicles were involved in the Accident.

17. A true and accurate copy of the police report related to the Accident is submitted herewith as PageID.12-14.

18. Following the Accident, a wrecker truck assisted in extracting Behnke's Trailer from the field.

19. In the field, while attempting to extract the Trailer, the wrecker truck pulled the Trailer such that the axles pulled away from the frame of the Trailer.

20. As a result of the wrecker pulling the axles away from the frame of the Trailer, the trailer was no longer suitable for road carriage. Therefore, the wrecker hauled the Trailer to a shop in Ohio for repair.

21. Behnke dispatched a separate trailer to the shop in Ohio to complete the carriage of the Shipment to Denso.

22. While in the shop in Ohio, Behnke transloaded the Shipment from the Trailer into a new trailer.

23. Behnke carried the Shipment in the new trailer to Denso's facility in Michigan.

24. Prior to delivery of the Shipment, Behnke never advised Denso regarding the Accident.

25. Prior to delivery of the Shipment, Behnke never advised Denso of the damage to the Trailer.

26. Prior to delivery of the Shipment, Behnke never advised Denso of the transloading of the Shipment from the Trailer to a new trailer.

27. Behnke delivered the Shipment to Denso on October 16, 2013.

28. Within days of delivery of the Shipment by Behnke, Denso observed damage to some of the Shipment and contacted Behnke.

29. The parties agreed that Denso should isolate any part of the Shipment that had not entered production.

30. Denso and Behnke agreed that Behnke would take the blower motors to its facility for inspection and storage.

31. 2912 motors from the shipment were placed into production.

Plaintiff's Complaint (Dkt 1) alleges two claims:  Count I, Carmack Amendment, 49 U.S.C. § 14706; and Count II, Bailment.

## II. Legal Standards

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess*, 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law.'" *Sierra Brokerage Servs.*, 712 F.3d at 327 (quoting *Anderson,* 477 U.S. at 251-52).

The parties seek to resolve this case through cross-motions for summary judgment. "[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "'[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Id.* (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)); *see also B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592-93 (2001). The Court considers the cross-motions accordingly.

### III. Analysis

#### A. Defendant's Motion

Defendant advances several independent bases for summary judgment of Plaintiff's Carmack Amendment claim, none of which the Court finds persuasive, as discussed subsequently.

Defendant also seeks summary judgment/dismissal of Plaintiff's Bailment claim on the ground that regardless whether the claim is advanced under federal or state law, it is preempted by the Carmack Amendment. Plaintiff has not responded to this argument. The Sixth Circuit has recognized that, with the Carmack Amendment, Congress fully preempted state law concerning the liability of interstate rail and road carriers. *CNA Ins. Co. v. Hyundai Merchant Marine Co., Ltd.*, 747 F.3d 339, 355 (6th Cir. 2014) (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913)). *See Thornton v. Philpot Relocation Sys.*, No. 3:09-CV-329, 2012 WL 174937, at *3-4 (E.D. Tenn. Jan. 20, 2012) (state law claims for breach of contract, bailment, and breach of warranty,

stemming from an interstate move, fall squarely within the exclusive ambit of the Carmack Amendment, and are, therefore, preempted). Having received no argument or authority to the contrary from Plaintiff, the Court grants Defendant's motion for summary judgment as to Count II, Bailment.

1.

Defendant first argues that Plaintiff's Carmack Amendment claim fails as a matter of law because Plaintiff cannot establish its *prima facie* case under the Carmack Amendment. Defendant contends Plaintiff cannot prove Defendant received the cargo in good condition, cannot prove the cargo was damaged or show an actual loss.

Pursuant to the Carmack Amendment, 49 U.S.C. § 14706, a plaintiff establishes a *prima facie* case by showing "three basic elements":

(1) that the initial ("receiving") carrier received the cargo in good condition,

(2) that the cargo was lost or damaged, and

(3) the amount of actual loss or damages.

*CNA Ins. Co.*, 747 F.3d at 353 (citing *Mo. Pac. R.R. v. Elmore & Stahl*, 377 U.S. 134, 137-38 (1964)). The burden then "shifts to the defendant-carrier to show both that it was not negligent and that the damage was instead due to one of five excepted causes: (1) an act of God; (2) an act of terrorism or war; (3) an act of the shipper itself; (4) an act of public authority; or (5) the inherent vice or nature of the goods." *Id.* "If the defendant-carrier meets this burden, it wins. *If not, then the shipper prevails based on its establishing the—very low threshold—prima facie case.*" *CNA Ins. Co.*, 747 F.3d at 353 (emphasis added).

Defendant argues that Plaintiff has not shown that its goods were undamaged when received by Defendant and Plaintiff has failed to identify any witness who can testify on this issue. This argument ignores the record evidence, all of which establishes, either directly or by reasonable inference, that the goods were undamaged when received by Defendant. For example, the Declaration of Miriam Sundalius, Denso's Director of Quality Assurance, details the manufacturer's packaging and handling procedures followed to ensure that the blower motors are free from defects and protected from damage prior to installation in vehicles; states that ASMO and Denso maintain rigid quality control measures; and expressly states that ASMO inspected the Cargo before packaging the Cargo for transportation to ensure adherence to these standards (Sundalius Decl., Pl. Ex. 1, Dkt 49-1). In addition to the Declaration's numerous specific statements addressing the quality control standards and procedures, the Declaration also indicates that ASMO delivered the Cargo to Defendant on October 15, 2013 in good order and condition; that no party identified any damage to the Cargo or packaging in which the Cargo was carried; and that Defendant accepted the Cargo without noting any exceptions to the condition of the Cargo or packaging (*id.* ¶¶ 15-19).

Defendant's argument to the contrary is based on no discernable foundation—no evidence, no inference based on the evidence, no factual circumstances and no logical reasoning—and is devoid of merit.[2] Plaintiff has established element one of its claim under the Carmack Amendment.

---

[2]Defendant's attack on Sundalius' Declaration for lack of personal knowledge similarly falls short. For example, Defendant criticizes the Declaration for failing to detail the basis of Sundalius' personal knowledge and failing to indicate that she observed the shipping or packaging practices. But Sundalius expressly states that she has visited ASMO's facility and observed the manufacturing and preparation of blower motors and that Denso and ASMO discuss packaging and handling procedures for quality control purposes (Pl. Ex. 1 ¶ 7). Defendant's challenge to the Declaration is rejected.

Plaintiff has also presented evidence to establish elements two and three of its Carmack Amendment claim—that the cargo was lost or damaged and the amount of actual loss or damages. Plaintiff presented evidence that Defendant delivered the Cargo in damaged condition to Denso, and it could no longer be certified as free from defect as a result of the trucking accident. The evidence shows that Defendant failed to deliver the Cargo "as required," and the Cargo was "damaged" as a result of the trucking accident and subsequent related events, because it was "exposed to damaging conditions." *See Ga., Fla. & Ala. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 195 (1916); *Oshkosh Storage Co. v. Kraze Trucking LLC*, 65 F. Supp. 3d 634, 637 (E.D. Wis. 2014); *Great Am. Ins. Co. v. USF Holland Inc.*, 937 F. Supp. 2d 376, 386 (S.D.N.Y. 2013).

Defendant argues that Plaintiff has not demonstrated an actual loss because the "actual value" of Plaintiff's physical property (the motors) at delivery was the same as it was at the time of shipment. Defendant asserts that Plaintiff's subrogor's (Denso's) refusal to warrant the goods created an injury not based on physical damages. Instead, the refusal to warrant the goods is based on pure speculation that all of the motors must have been damaged in transit because some of the motors were damaged. Defendant relies on its expert inspection by LWG, finding only 32 motors with actual physical damage, and LWG's indication that additional testing, as necessary, should be performed by the motor manufacturer, which would have testing stations already in place. Defendant states that there is no evidence that such additional testing was performed.

It is undisputed that at least some of the Cargo exhibited evidence of physical shock damage. Defendant acknowledges that 32 motors were confirmed to have impact-related physical damages as a result of the trucking accident. Thus, it is apparent that Plaintiff has suffered an actual loss.

Plaintiff has presented further evidence that the only means of testing the entirety of the Cargo to ensure it was free from defect would require dismantling of the blower motors, i.e., destruction. The Cargo was accordingly ultimately destroyed. Plaintiff's evidence establishes a loss of $114,473.66, which includes the invoice cost of the Cargo, plus freight and insurance. Such losses are appropriate damages under the Carmack Amendment. *See Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys. Inc.*, 325 F.3d 924, 935, n.7 (7th Cir. 2003) (explaining the components and calculation of damages in Carmack Amendment claims); *see also Marquette Cement Mfg. Co. v. Louisville &Nashville R.R. Co.*, 406 F.2d 731, 732 (6th Cir. 1969) (freight charges permissible damages under the Carmack Amendment).

At best, Defendant presents evidence disputing only the extent of Plaintiff's loss. However, even in that regard, Plaintiff has presented evidence to support its claim that the entire shipment of blower motors was damaged and thus unusable as a result of the trucking accident. Plaintiff has presented ample evidence to establish elements two and three of its Carmack Amendment claim—that the Cargo was lost or damaged and the amount of actual loss or damages. Defendant's argument that Plaintiff has not established a *prima facie* case under the Carmack Amendment fails.

2.

Defendant next argues that Plaintiff's claim fails as a matter of law because Plaintiff has not shown that it had an applicable policy of insurance. Specifically, Plaintiff cannot establish that its insurance policy was in effect on the date in question, and Plaintiff cannot prove that there was "physical loss or damage" as that term is used in the policy. Defendant asserts that without these proofs, Plaintiff paid as a volunteer and cannot recover from Defendant.

Plaintiff asserts that Defendant's arguments challenging insurance coverage make no difference with respect to the substantive dispute. The Court agrees. Plaintiff and its insured agreed that the "all risks" policy covered the loss. Plaintiff paid the claim filed by its insured, Denso, and in return, obtained subrogation rights. Plaintiff is entitled to proceed against Defendant, as though "standing in the shoes" of Denso. *See Progressive Mich. Auto. Ins. Co. v. Nat'l Cas. Co.*, No. 14–13859, 2015 WL 6082088, at *3 (E.D. Mich. 2015) (rights of the subrogee in a subrogation action depend on what rights its subrogor would have had if the subrogor had brought the action him or herself); *see also Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 n.1 (6th Cir. 2013) ("As subrogees, plaintiff insurers stand in the shoes of, and have no greater rights than, their insured."). Defendant provides no authority showing that Defendant has a legal challenge to the policy coverage or claim payment as between Plaintiff and its insured, and this Court is not so persuaded. Regardless, the Court concludes that the attack on the insurance policy is immaterial to Defendant's liability on the substantive claims, and thus it provides no basis for summary judgment.

3.

Third, Defendant argues that Plaintiff's case should be dismissed as a sanction for spoliation of evidence. Defendant asserts that Plaintiff ordered the destruction of the motors knowing that Defendant would be deprived of the opportunity to perform further tests. The motors were destroyed without giving notification to Defendant of the imminent destruction and before Plaintiff filed a formal claim with Defendant. Defendant argues that this intentional destruction of evidence should result in a dismissal of Plaintiff's claim, as no lesser sanction can remedy the prejudice.

Defendant's argument lacks merit under the circumstances presented. Defendant asserts that the claim for subrogation was not presented to Defendant until January 2015, after the parts were

ordered to be destroyed on October 30, 2014. However, as Plaintiff points out, the record of Defendant's actions fully establishes that Defendant was aware early on of the claim for damages to the Cargo. Moreover, the damaged Cargo was in Defendant's own control, and Defendant certainly could have undertaken whatever action was necessary to preserve the Cargo to obtain evidence, if any, to support its contentions.

Plaintiff points out that Defendant has produced a formal notice of claim from Denso dated October 21, 2013, as part of its exhibits supporting its instant motion (Def. Ex. E, Maria Enriquez Dep., Dkt 47-5 at PageID.257). Defendant additionally produced an email from Denso dated October 18, 2013, alerting Defendant of the loss, in an email exchange that shows Defendant visited Denso's facility to inspect the Cargo on October 18, 2013 (*id.* at PageID.478-480). Further, Defendant hired LWG to inspect the Cargo on December 16, 2013 (Def. Ex. E, LWG Report, Dkt 47-6 at PageID.300). Defendant inspected the Cargo at Denso's facility, and on October 22, 2013, moved the Cargo to Defendant's own facility, where it remained until it was destroyed more than a year later. Defendant hired an expert to assess the damage over ten months before the ultimate disposition of the Cargo. Defendant's hiring of an expert clearly establishes Defendant's expectation that a formal claim was forthcoming.

A court may impose spoilation sanctions if three conditions are met: (1) the party with control of the evidence must have had an obligation to preserve it at the time it was destroyed, (2) the accused party destroyed the evidence with a culpable state of mind, and (3) the destroyed evidence was relevant to the other side's claim or defense. *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010). Here, Defendant had every opportunity to inspect, test or otherwise examine the Cargo during the year it was stored at Defendant's facility. There is no evidence that

the destruction of the evidence was undertaken with a culpable state of mind, and in fact, the only evidence supports that the destruction resulted because the blower motors were determined to be unusable by Denso. The Court finds no basis for spoliation sanctions, and particularly not the harsh sanction of dismissal.

### B. Plaintiff's Cross-Motion

Plaintiff moves for summary judgment of its Carmack Amendment claim, arguing that it has established all three elements of this claim: (1) Defendant received the Cargo in good order and condition; (2) Defendant delivered the Cargo in a damaged condition to Denso; and (3) Plaintiff has established its damages. *See CNA Ins. Co.*, 747 F.3d at 353. Plaintiff requests that the Court grant summary judgment and permit Plaintiff to submit an itemized calculation of interest, costs and expenses as of the date of judgment.

The parties do not provide separate argument to specifically address Plaintiff's motion. For the reasons discussed above, the Court agrees that Plaintiff has fully established elements one and two of this claim; no genuine issues of material fact exist with respect to either of these elements, and Defendant's arguments to the contrary lack merit. However, as to element three, damages, the Court concludes that genuine issues of material fact exist as to the extent of Plaintiff's damages. Plaintiff has presented strong evidence from various sources that the entire shipment of blower motors was unusable as a result of Defendant's trucking accident and Defendant's subsequent handling of the Cargo. For instance, Plaintiff has presented an extensive expert report on the Cargo damage by Derek A. Starr, professional engineer (S•E•A™ Report, Pl. Ex. F, Dkt 49-2), which concludes that, as a result of the trucking accident:

- The automotive blower motors were subjected to abuse, beyond that which they were intended to be subjected to, during shipping.

- Any or all of the blower motors within the subject shipment may have been damaged as a result of the abnormal abuse experienced during shipping.

- The bearing assemblies and stator magnets utilized within the subject motors could be damaged in a manner that would not be immediately apparent, but would introduce latent defects that would affect the motors' long-term ability to operate as intended.

- The only way to identify such damage would be to destructively disassemble and examine the motors, which would render them unusable.

(*Id.* at PageID.621). The S•E•A™ Report is in keeping with other substantial, detailed record evidence concerning the use, operation, testing and potential failures of the blower motors as a result of the trucking accident, including a Marine Cargo Survey Report provided by Jill Yandura of VRS Vericlaim (Dkt 47-5 at PageID.274), which concluded:

> Based on our inspection of the parts, information gleaned over the course of this matter, the explanation provided by Denso's Director of Quality [Assurance] and the Analysis Report from the manufacturer, it is our opinion that the rejection of the remaining parts is fair and reasonable.

Defendant, on the other hand, has presented a Loss Analysis Report on the Cargo damage from its expert, Timothy C. Hurley, LWG Consulting, which concludes:

1. LWG observed impact related damage to Model #AY272700-0570 and Model #AY166100-0233 blower motors. The replacement cost value of the confirmed damaged motors is $304.40.

2. LWG's professional opinion, based on the visual observations during the site inspection and the preliminary testing performed, is that the majority of the blower motors have not sustained damage related to the loss event.

(Dkt 47-1 at PageID.168).

The LWG Report states that in its basic test of eight motors, LWG did not observe any indications that the internal components were damaged, but that its professional opinion was "that any testing should be performed by the manufacturer who would have the necessary testing stations

already in place as part of their quality control" (*id.* at PageID.159). However, Plaintiff's expert report from Derek Starr concludes that "The opinions stated in the LWG Consulting (LWG) Loss Analysis Report on this matter are both incorrect and misleading (S•E•A™ Report, Dkt 49-2 at PageID.621).

The parties' expert opinions are at odds. If the evidence Plaintiff proffers on summary judgment, and most particularly, witness testimony, proves to be credible, the Court has little doubt that Plaintiff will succeed on its claim for damages based on the alleged loss of $114,473.66. Nonetheless, because Defendant has presented evidence, although limited, that only 32 motors were damaged, the Court concludes that there are disputed issues of fact concerning the extent of Plaintiff's damages, not properly resolved on a motion for summary judgment. In considering a motion for summary judgment, the Court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). The court may not, however, make credibility determinations, weigh the evidence or determine the truth of the matter asserted, since such functions rest solely with the ultimate factfinder. *Anderson*, 477 U.S. at 255; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

## IV. Conclusion

On the record and arguments presented, the Court concludes that Defendant's motion for summary judgment is properly denied in part and granted in part; the motion is denied as to Plaintiff's Carmack Amendment claim, but granted as to Plaintiff's Bailment claim. Plaintiff's cross-motion for summary judgment is properly granted in part and denied in part given disputed facts concerning the extent of the damage to the Cargo; the Court concludes that Plaintiff has established the elements of its Carmack Amendment claim, and the only issue remaining for

decision is the amount of damages to which Plaintiff is entitled with respect to element three of the Carmack Amendment claim.

      An Order will enter consistent with this Opinion.


Dated: October 20, 2016                             /s/ Janet T. Neff
                                                     JANET T. NEFF
                                                     United States District Judge